**NORTH GATES ELKS CLUB**
a corporation,

v.

**Riley C. GARNER, Shelby County Trustee and George C. LaManna, Shelby County Assessor.**

Supreme Court of Tennessee.

May 7, 1973.

Rehearing Denied July 16, 1973.

T. J. Griffin, Memphis, for plaintiff-appellant.

J. Minor Tait, Jr., Asst. County Atty., Memphis, for defendants-appellees.

## OPINION

McCANLESS, Justice.

The appellant, North Gates Elks Club, is a general welfare corporation, chartered in the State of Tennessee for the following purposes:

"Wholesome association with congenial companions who are deeply imbued with the spirit of patriotic loyalty and devotion, who recognize the obligations of human brotherhood, and who desire, without the fanfare of the trumpets of publicity, to share with their associates in the endeavor to feed the hungry, to shelter the homeless, to relieve those in distress, and to prove themselves true friends to all in need."

The Elks Club filed suit against the appellees for the recovery of taxes paid after delinquency and under protest for the year 1970. The plaintiff sought declaratory relief to determine whether or not the plaintiff's property was owned, occupied, and used solely and exclusively for charitable and educational purposes enabling it to avail itself of the tax exempt status provided in Section 67–502(2), T.C.A. and, further, an injunction restraining the future assessment of its property was prayed for. The Chancellor dismissed the complaint and plaintiff duly perfected its appeal assigning as error:

(1) That the Chancellor erred in refusing to admit the testimony of George C. LaManna, Defendant County Assessor of taxes, relative to his determination of the use of property, owned, occupied and used by Al Chymia Temple, Ancient Arabic Order, Nobles of the Mystic Shrine; (2) that the court erred in holding that the use of the property in question is not exclusively for religious, charitable and educational purposes.

The appellees maintain that the Elks Club is not entitled to a tax exempt status because its property was not occupied and used exclusively for religious, charitable or education purposes, but to the contrary was used primarily for social activities.

The record indicates that the appellant holds title to real and personal property situated in Shelby County. The property is improved by a lodge building consisting of a recreation lobby, kitchen, secretary's office, game room, refreshment bar, rest rooms, lounge, and lodge meeting hall. The parties stipulated that the lodge is open seven days a week, twelve months a year from 3:00 p. m. to 9:00 p. m. on weekdays and Sundays and from 3:00 p. m. to 11:00 p. m. on Saturdays. The property contains a bar which serves mixed drinks and beer. The Club charges seventy-five cents for mixed drinks compared to an average price of $1.25 in commercial establishments and thirty-five cents for beer. In the game room, regular poker and gin rummy games are held, and the kitchen is used " . . . occasionally when special parties are held." The bar is open every night and since May, 1971, bingo games are held every Friday night and there are also parties held on special occasions such as Halloween and a yearly picnic. There were no educational meetings conducted on the property in 1970, however a meeting on drug abuse is planned for the future. Guests are allowed to use the facilities provided they are accompanied by a member. In addition to the aforementioned stipulated facts, a copy of the appellant's Income Statement and Balance Sheet for the year 1970 was attached.

The sole issue for our determination is whether this corporation qualifies as a tax exempt organization under Section 67–502, T.C.A. That statute provides:

"1. * * *

"2. The real estate owned by any religious, charitable, scientific or educa-

tional institution occupied by such institution or its officers exclusively for carrying out thereupon one (1) or more of the purposes for which said institution was created or exists, and the personal property of any such institution used exclusively for one (1) or more of the purposes for which such institution was created or exists; . . . provided, however, that each church or synagogue shall be entitled to a specific exemption from taxation on one (1) parsonage situated on a lot containing not more than three (3) acres so long as it is owned by said church or synagogue and is used as the individual or family residence of its principal minister, priest or rabbi.

"But, the property of such institution shall not be exempt if the owner, or any stockholder, officer, member or employee of such institution shall receive or may be lawfully entitled to receive any pecuniary profit from the operations of that property in competition with like property owned by others which is not exempt, except reasonable compensation for services in effecting one (1) or more of such purposes, or as proper beneficiaries of its strictly religious, charitable, scientific or educational purposes; or if the organization thereof for any such avowed purpose be a guise or pretense for directly or indirectly making any other pecuniary profit for such institution, or for any of its members or employees, or if it be not in good faith organized or conducted exclusively for one (1) or more of said purposes. The real property of any such institution not so used exclusively for carrying out thereupon one (1) or more of such purposes, but leased or otherwise used for other purposes, whether the income received therefrom be used for one (1) or more of such purposes or not, shall not be exempt; but if a portion only of any lot or building of such institution is used exclusively for carrying out thereupon one (1) or more of such purposes of such institution, then

such lot or building shall be so exempt only to the extent of the value of the portion so used, and the remaining or other portion, to the extent of the value of such remaining or other portion, shall be subject to taxation."

 The fact that a corporation is organized under a general welfare charter does not of itself exempt the property held by the corporation from taxation. City of Memphis v. Alpha Beta Welfare Ass'n., 174 Tenn. 440, 126 S.W.2d 323 [1939]. This Court has stated unequivocally that ". . . neither its charter nor constitution is decisive of the liability of a corporation for taxation." State et al. v. Rowan et al., 171 Tenn. 612, 106 S.W.2d 861 [1937]. The real test determinative of a corporation's tax exempt status is the use it makes of the property.

"The property of a corporation for which exemption is claimed must be held and *used* for purposes purely or exclusively religious, charitable, scientific, literary, or educational in order to be exempt." State v. Rowan, supra. (Emphasis supplied.)

Although our statute (§ 67–502, T.C.A.) has undergone several changes through amendment, the standard required of corporations seeking a tax exemption has not changed. In Nashville v. State Board of Equalization, 210 Tenn. 587, 360 S.W.2d 458 [1962], this Court reviewed extensively the modifications made by amendment and reiterated the test for exemption:

"Thus, from the plain meaning of this language (referring to T.C.A. Section 67–502, subsection 2), it is quite clear that this Act exempts and excepts real estate of such an institution from the common burden of taxation only if and when such real estate

(1) is '*occupied* by such institution or its officers *exclusively* for carrying

out thereupon one (1) or more of the *purposes'* of its charter, and

(2) is being *'used exclusively'* for such purpose, and any part of such real estate 'not so used *exclusively'* for such purpose, 'but leased or *otherwise used for other purposes,'* shall be taxed to the extent of its value."

The facts of this case clearly indicate that the Elks Club did not occupy or use its property exclusively for any of the exempt purposes. A review of the stipulated facts as set out above demonstrate the property was used primarily, if not solely, for social functions. An examination of the income statement reveals the total income from club operations amounted to $17,853.04 and of this amount $10,679.57 came from bar receipts. Charity donations for this period amounted to only $507.83 with no expenditures for community projects.

We are of the opinion that the property is mainly used for social activities and lodge meetings with little or no evidence to indicate the property is used exclusively for carrying out any exempt purpose. We therefore affirm the Chancellor's holding.

DYER, C. J., CHATTIN and HUMPHREYS, JJ., and WILSON, Special Justice, concur.

## OPINION ON PETITION TO REHEAR

The North Gates Elks Club has filed its petition to rehear, insisting that because of its charitable activities its property should be exempt from taxation. Counsel so argued, both in his briefs and orally. We were and we remain of the opinion that since the property is not used exclusively for an exempt purpose it is subject to taxation.

We deny the petition to rehear.